UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| GRACE VILLAGE HEALTH CARE FACILITIES, INC., and NATIONAL FELLOWSHIP BRETHREN RETIREMENT HOMES, INCORPORATED, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL NO. 3:11cv295 |
| LANCASTER POLLARD & CO., and STEVEN W. KENNEDY, | ) ) ) ) | |
| Defendants. | ) ) | |
| LANCASTER POLLARD & CO. and STEVEN W. KENNEDY, | ) ) ) ) | |
| Third-Party Plaintiffs, | ) ) | |
| v. | ) ) | |
| PECK, SHAFFER & WILLIAMS LLP, and JASON L. GEORGE, | ) ) ) ) | |
| Third-Party Defendants. | ) | |

OPINION AND ORDER

This matter is before the court on a motion for partial dismissal filed by the defendants, Lancaster Pollard & Co. ("Lancaster Pollard") and Steven W. Kennedy, Jr. ("Kennedy"), on April 20, 2012. The plaintiffs, Grace Village Health Care Facilities, Inc. and National Fellowship Brethren Retirement Homes, Incorporated (collectively "Grace Village"), filed its response on May 7, 2012, to which the defendants replied on May 24, 2012.

Also before the court are motions to dismiss filed by third-party defendants, Peck,

Shaffer & Williams LLP and Jason L. George.

For the following reasons, the defendants' motion for partial dismissal will be granted and the third-party defendants' motions to dismiss will be denied.

Discussion

Grace Village has sued the defendants in three counts: (1) breach of contract; (2) professional negligence, misrepresentation, and negligence per se; and (3) breach of fiduciary duty. The following background facts are taken from Grace Village's First Amended Complaint. This action arises from the termination of two interest-rate swap agreements between Grace Village and Lehman Brothers Special Financing, Inc. ("Lehman"). Defendant Lancaster Pollard, an investment bank, served as an underwriter for bonds issued in 2006 for the benefit of Grace Village, a not-for-profit retirement home for the elderly.

In or around 2006, Kennedy, a Vice President and Investment Banker at Lancaster Pollard, advised Grace Village to enter into two interest-rate swaps with Lehman, which Grace Village did. After Lehman and certain of its related entities filed for bankruptcy in September 2008, Lancaster Pollard and Kennedy advised Grace Village to terminate the swaps. Lancaster Pollard and Kennedy instructed Grace Village on how to terminate the swaps. Among other things, Lancaster Pollard and Kennedy specifically instructed Grace Village to send default and termination notices to Lehman by fax; and at termination, to state that the value of the swaps was zero. Grace Village, relying on Lancaster Pollard and Kennedy's superior knowledge, followed Lancaster Pollard and Kennedy's instructions. Those instructions were wrong

Nevertheless, when Lehman claimed that Grace Village had not properly terminated the swaps and demanded payment from Grace Village, Lancaster Pollard and Kennedy advised

Grace Village that Lehman was wrong.

After lengthy negotiations, Grace Village settled with Lehman. Though the Bankruptcy Court's September 17, 2009 Order and the terms of the settlement require that Lehman's arguments and statements during the mediation be confidential, Grace Village is authorized to reveal that it paid $1,050,000 to Lehman as a reasonable final settlement resolving Lehman's claims against Grace Village.

Count II of Grace Village's Amended Complaint is a claim, in part, for "Misrepresentation" and alleges that Lancaster Pollard and Kennedy are liable for "intentionally . . . misrepresenting the effectiveness of faxing the notices" and "intentionally . . . misrepresenting that the swaps had been terminated." *See* Dkt. 58, p. 13, Count II. In their prayer for relief, Grace Village seeks "punitive damages" against Lancaster Pollard and Kennedy for alleged "fraudulent . . . misconduct in continuing to misrepresent to Grace Village the effectiveness of the default and termination notices and the status of the swaps' terminations" (Dkt. 58, p. 15).

The defendants contend that Grace Village's fraud claim against Lancaster Pollard and Kennedy should be dismissed under Rule 9(b), which provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b)."This heightened pleading requirement is a response to the great harm to the reputation of a business firm or other enterprise a fraud claim can do." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Rule 9(b) provides a measure of assurance "that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Ackerman v. Northwest Mutual Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999); *see also id.*

(stating "public charges of fraud can do great harm to the reputation of a business firm or other enterprise (or individual)").

The "circumstances constituting fraud" that must be pled "with particularity" under Rule 9(b) "include the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) (internal quotations omitted). "A complaint alleging fraud must provide the who, what, when, where, and how." *Borsellino*, 477 F.3d at 507 (internal quotations omitted).

In the present case, the Amended Complaint asserts (1) that "Lancaster Pollard and Kennedy" intentionally misrepresented "the effectiveness of faxing the notices" and "that the swaps had been terminated" (Dkt. 58, p. 13, ¶ 79), (2) that, after Lehman's bankruptcy and demands for payment, "Lancaster Pollard and Kennedy" advised Grace Village by emails on September 18, 2009, and August 10, 2010, "that it was 'confident we have collectively proceeded in the correct manner' and that 'the process we used to unwind your swap will hold up,'" and (3) that "Lancaster Pollard and Kennedy" made "similar representations" on "many occasions" (Dkt. 58, p. 11, ¶ 67). The defendants argue that such allegations do not satisfy the heightened pleading requirement of Rule 9(b). *See, e.g., Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (affirming dismissal of fraud claim under Rule 9(b)); *In re Healthcare Compare Corp. Securities Litigation*, 75 F.3d 276, 281-84 (7th Cir. 1996) (reversing denial of motion to dismiss fraud claim based on Rule 9(b)).

The defendants argue that the Amended Complaint's general allegations omit the

4

particulars regarding the "circumstances constituting fraud" (Fed. R. Civ. P. 9(b)), such as: (1) Does Grace Village allege that anyone at Lancaster Pollard other than Kennedy made misrepresentations? If so, who?; (2) Were misrepresentations made to both Grace Village and National? Or just Grace Village? To whom (what individual) were the misrepresentations made? (3) Were the misrepresentations all communicated in emails? Or were they also made in other writings? Were any verbal misrepresentations made?; (4) What is the content of the "similar representations" (Dkt. 58, ¶ 67) that were made? And by whom, to whom, and when were they made?; (5) What dates correspond to the "many occasions" (Dkt. 58, ¶ 67) when alleged misrepresentations were made?; (6) Were all of the misrepresentations made after Lehman's bankruptcy and demand for payment?

The defendants argue that, consistent with Rule 9(b), Grace Village should be required to plead such particulars regarding its "averments of fraud" (Fed. R. Civ. P. 9(b)).

In response, Grace Village contends that the "what" consists of alleged statements by "Lancaster Pollard and Kennedy" that they were "confident we have collectively proceeded in the correct manner" to terminate Grace Village's swap agreements with Lehman and that "the process we used to unwind the swaps will hold up," as well as "similar representations about the effectiveness of faxing the termination notices and whether the swaps had been terminated." *Plaintiffs Br*. at 4

As the defendants note, this is the same deficiency as in the Amended Complaint. *See Amended Complaint* ¶ 67 ("similar representations on many occasions"). Grace Village states that they pleaded the "when, where, and how" "by, among other things, emails dated September 18, 2009 and August 10, 2010." *Plaintiffs' Br*. 4. However, these vague allegations do not

5

satisfy the heightened pleading requirement of Rule 9(b). *See In re Healthcare Compare Corp. Securities Litigation*, 75 F.3d 276, 281-84 (7th Cir. 1996) (reversing denial of motion to dismiss fraud claim based on Rule 9(b)); *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (affirming dismissal of fraud claim under Rule 9(b)). Accordingly, the fraud count will be dismissed on this basis.

The defendants further argue that the Amended Complaint fails to plead facts to support a plausible claim that Lancaster and Kennedy committed fraud. "Under Indiana law, to prove an actual fraud claim, a plaintiff must demonstrate: (1) a material misrepresentation of past or existing fact which (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) which proximately caused the injury or damage complained of." *Doe v. Howe Military School*, 227 F.3d 981, 990 (7th Cir. 2000) (internal quotations omitted).

"An intent to deceive, or 'scienter,' is an element of actual fraud, whether classified as a knowing or reckless misrepresentation or as an additional element to a knowing or reckless misrepresentation." *Wright v. Pennamped*, 657 N.E.2d 1223, 1230 (Ind. Ct. App. 1995). "Although Rule 9(b) does not require 'particularity' with respect to the defendants' mental state, the complaint still must afford a basis for believing that plaintiffs could prove scienter." *Dileo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990). As the Seventh Circuit has made clear: "There is no 'fraud by hindsight'" (*id.* at 628).

The defendants contend that hindsight is all that Grace Village offers in its Amended Complaint. The defendants point out that Grace Village does not allege that Lancaster Pollard and Kennedy engaged in self-dealing or somehow benefitted from giving Grace Village "wrong"

6

advice regarding termination of the Lehman swap agreements. The defendants assert that the Amended Complaint fails to plead *facts* to support a plausible claim that Lancaster Pollard and Kennedy acted with the requisite scienter (intent to deceive) to support a fraud claim. *See Dileo*, 901 F.2d at 628 (affirming dismissal of fraud claim where complaint "discloses none of the circumstances that might separate fraud from the benefit of hindsight").

On pages five and six of its response, Grace Village lists seven bullet points purporting to support the contention that "Defendants acted with intent to deceive." *Plaintiffs' Br*. at 5-6. However, none of these points is indicative of scienter. At most, these assertions show that defendants negligently advised Grace Village regarding termination of the Lehman swaps.

As noted, the Amended Complaint does not allege Lancaster Pollard or Kennedy engaged in self-dealing or somehow benefitted by giving Grace Village "wrong" advice regarding termination of the Lehman swaps. Plaintiffs have failed to plead *facts* to support a plausible claim that Lancaster Pollard or Kennedy acted with "the intent to deceive" to support a fraud claim. *See Dileo*, 901 F.2d at 628.

The defendants are correct that speculation in Grace Village's response brief regarding Lancaster Pollard and Kennedy's alleged motives for providing "incorrect advice" does not provide a "reasonable inference" of scienter. *Plaintiffs' Br*. at 6. Moreover, the Supreme Court in *Twombly* made clear that "the complaint must contain 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011) (quoting *Twombly*, 550 U.S. 544, 557 (2007)).

Grace Village also argues that intent to deceive is a "question of fact" and, therefore, not a

7

proper basis for dismissal. *Plaintiffs' Br.* at 6. However, dismissal of a fraud claim is proper where, as here, a complaint fails to plead facts supporting a plausible claim that the defendant acted with the intent to deceive. *See Tricontinental Industries, Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007); *Robin v. Arthur Young & Co.*, 915 F.2d 1120, 1127 (7th Cir. 1990) (affirming dismissal of fraud claim and stating "the amended complaint as a whole provides no grounds for believing the plaintiffs could prove scienter"); *Dileo*, 901 F.2d at 628 (affirming dismissal of fraud claim); *Stamatio v. Hurco Companies, Inc.*, 885 F.Supp. 1180, 1185 (S.D.Ind. 1995). Thus, the fraud claim is properly dismissed on this basis.

The defendants further contend that there is no allegation of misrepresentation of a past or existing fact. Under Indiana law, an essential element of a fraud claim is "a material misrepresentation of past or existing fact." *Doe*, 227 F.3d at 990. "Actual fraud may not be based on representations regarding future conduct, or on broken promises, unfulfilled predictions or statements of existing intent which are not executed." *Id.* (internal quotations omitted). The Amended Complaint simply asserts Lancaster Pollard and Kennedy made misrepresentations regarding "the effectiveness of the default and termination notices and the status of the swaps' terminations" (Dkt. 58, p. 15; *see also* Dkt. 58, p. 13, Count II). The defendants argue that at most, such statements amount to "broken promises" or "unfulfilled predictions" and cannot serve as the basis for fraud.

Moreover, "under Indiana law certain representations are inactionable as a matter of law. Among these are representations as to the legal effect of an instrument." *Vickers v. Henry County Savings & Loan Assoc.*, 827 F.2d 228, 232 (7th Cir. 1987) (affirming dismissal of fraud claim; internal quotations omitted); *see also Plymale v. Upright*, 419 N.E.2d 756, 763-64 (Ind. Ct. App.

8

1981)(reversing jury verdict for plaintiff on fraud claim); *General Electric Capital Corp. v. Delaware Machinery & Tool Co., Inc.*, 2011 WL 1899203, *3 (S.D. Ind. 2011). The defendants argue that Grace Village's fraud claim fails because it is based solely on alleged representations by Lancaster Pollard and Kennedy regarding the legal effect of an instrument (namely, the notices of termination of the Lehman swap agreements).

Additionally, "expressions of opinion cannot be the basis for an action in fraud." *American United Life Ins. Co. v. Douglas*, 808 N.E.2d 690, 703 (Ind. Ct. App. 2004); *see also Kreighbaum v. First National Bank & Trust*, 776 N.E.2d 413, 421 (Ind. Ct. App. 2002) ("Mere expressions of opinion cannot be the basis for an action in fraud; an action in fraud requires a misrepresentation of material fact.") (quoting *Block v. Lake Mortgage Co., Inc.*, 601 N.E.2d 449, 451 (Ind. Ct. App.1992)). The defendants contend that their alleged representations regarding termination of the swap agreements were, at most, expressions of opinion and cannot serve as the basis for fraud.

Grace Village states in its response that the fraud claim is based on Lancaster Pollard and Kennedy's alleged statements that they were "confident we have collectively proceeded in the correct manner" to terminate Grace Village's swap agreements with Lehman and that "the process we used to unwind the swaps will hold up," as well as "similar representations about the effectiveness of faxing the termination notices and whether the swaps had been terminated." *Plaintiffs Br*. at 4; *see also id.* at 6. However, an alleged expression of confidence in the manner in which the parties "collectively proceeded" is, at most, an expression of an opinion and cannot support a fraud claim. *See American United*, 808 N.E.2d at 703 ("Fraud requires a misrepresentation of a material fact; expressions of opinion cannot be the basis for an action in

fraud."); *Kreighbaum v. First National Bank & Trust*, 776 N.E.2d 413, 421 (Ind. Ct. App. 2002) ("Mere expressions of opinion cannot be the basis for an action in fraud; an action in fraud requires a misrepresentation of material fact.") (internal quotations omitted). And Lancaster Pollard's alleged statement that the process used to unwind the swaps agreement "will hold up" is not a representation of "past or existing facts" upon which a fraud claim can be based; it is, at most, an "unfulfilled prediction." *See Doe*, 227 F.3d at 990.

Moreover, the fraud claim fails because it is based solely on alleged misrepresentations regarding the legal effect of an instrument (*i.e.*, the termination notices for the Lehman swaps). The Seventh Circuit has made clear that, "under Indiana law certain representations are inactionable as a matter of law. Among these are 'representations as to the legal effect of an instrument.'" *Vickers v. Henry County Savings & Loan Assoc.*, 827 F.2d 228, 232 (7th Cir. 1987) (affirming dismissal of fraud claim) (quoting *Plymale v. Upright*, 419 N.E.2d 756, 763-64 (Ind. Ct. App. 1981)); *see also Plymale*, 419 N.E.2d at 763-64 ("There are a number of Indiana cases in which the courts have determined certain representations to be inactionable as a matter of law, or, reliance on certain types of representations to be unjustifiable as a matter of law. These cases involve representations of law, or, more particularly, representations as to the legal effect of an instrument.") (reversing jury verdict for plaintiff on fraud claim).

In *Scott v. Bodor, Inc.*, 571 N.E.2d 313, 319 (Ind. Ct. App. 1991), the Indiana Court of Appeals reaffirmed the "general rule" that "a misstatement of law normally does not constitute a representation upon which an action of fraud may be premised" but also recognized "exceptions to this general rule." For example, "pure misrepresentations of law can constitute actionable fraud" where "a party claims a special knowledge or expertise in the law and induces another to

rely on the claimed knowledge or expertise." *Id*. at 320 (bold added). In *Scott*, the defendant "provided tax planning advice" to the plaintiffs and "claimed an expertise in tax planning" and "claimed a special expertise in the type of plan into which the plaintiff was induced to enter." *Id*. at 316, 320. Such circumstances were "sufficient to invoke the exception to the general rule that legal misrepresentations cannot form the basis for fraud." *Id*. at 320.

As the defendants have pointed out, Grace Village's reliance on *Scott* misplaced. Grace Village argues that "Defendants claimed a special knowledge or expertise in bonds and interest rate swaps" upon which Grace Village relied. *Plaintiffs' Br*. 7. However, the Amended Complaint does not allege Lancaster Pollard or Kennedy ever claimed "special knowledge or expertise in the law" (*Scott*, 571 N.E.2d at 320). On the contrary, the Amended Complaint makes clear that they were consulting with legal "counsel" and that these "conversations with counsel" related to the "best course of action" to take in the wake of Lehman's bankruptcy. *Amended Complaint* ¶ 39.

Grace Village states that there was "clear language in the Agreement prohibiting termination by fax" (*Plaintiffs' Br*. at 6). The defendants, however, contend that if Grace Village's Agreement with Lehman was so clear regarding termination of the swaps, then that is all the more reason to dismiss the fraud claim against Lancaster Pollard and Lehman because "Indiana courts reject fraud claims that could have been prevented by reading a document." *Lady Di's, Inc. v. Enhanced Services Billing, Inc.*, 2010 WL 1258052, *4 (S.D. Ind. 2010); *see also General Electric Capital Corp. v. Delaware Machinery & Tool Co., Inc.*, 2011 WL 1899203, *3 (S.D. Ind. 2011) ("'Every person is presumed to know the contents of the agreement which he signs . . . .' The characterization of a contract, however, is clearly a question as to the contract's

legal effect, something upon which Hass had no right to rely.") (quoting *Plymale*, 419 N.E.2d at 764). In the present case, nothing "impair[ed]" Grace Village's "ability to discover the law applicable to the true facts," as was the case in *Scott*. *See Scott*, 571 N.E.2d at 320. Accordingly, for all the reasons set forth above, the fraud claim will be dismissed..

Next, the defendants argue that Grace Village's claim for negligence per se should be dismissed. Grace Village's claim for "negligence per se" is based solely on their contention that Lancaster Pollard and Kennedy "violated section 33-43-2-1 of the Indiana Code." *See* Dkt. 58, p. 14, ¶ 80. Section 33-43-2-1 provides: "A person who: (1) professes to be a practicing attorney; (2) conducts the trial of a case in a court in Indiana; or (3) engages in the business of a practicing lawyer; without first having been admitted as an attorney by the supreme court commits a Class B misdemeanor." I.C. § 33-43-2-1.

The defendants argue that the negligence per se claim fails for two separate reasons. First, under Indiana law, criminal statutes prohibiting the unauthorized practice of law do not provide the basis for a private right of action. *See, e.g., Miller v. Credit Bureau of Warrick County*, 296 N.E2d 673, 674 (Ind Ct. App. 1973); *Watson v. Auto Advisors, Inc.*, 822 N.E.2d 1017, 1029 (Ind. Ct. App. 2005).

Rather, "questions revolving about the subject matter of the unauthorized practice of law" are the exclusive province of the Indiana Supreme Court. *Miller*, 296 N.E.2d at 675; *see also Matter of Contempt of Mittower*, 693 N.E.2d 555, 558 (Ind. 1998) ("It is the exclusive province of this Court to regulate professional legal activity. This Court has original jurisdiction in matters relating to the unauthorized practice of law. It is the province of this Court to determine what acts constitute the practice of law.") (citations omitted).

Second, the defendants argue that Grace Village's Amended Complaint fails to plead *facts* to support a plausible claim that Lancaster Pollard or Kennedy violated Section 33-43-2-1. The Amended Complaint does not allege that either Defendant (1) "professe[d] to be a practicing attorney"; (2) "conduct[ed] the trial of a case in a court in Indiana"; or (3) held itself or himself out as being "engage[d] in the business of a practicing lawyer" in this state. I.C. § 33-43-2-1. On the contrary, the Amended Complaint makes clear that Grace Village knew that Lancaster Pollard and Kennedy were consulting with legal "counsel" and that their "conversations with counsel" related to the "best course of action" to take in the wake of Lehman's bankruptcy. *See* Dkt. 58, p. 7, ¶ 39.

Grace Village's response completely ignores the reason why alleged violations of criminal statutes prohibiting the unauthorized practice of law cannot provide a basis for civil liability – namely, "questions revolving about the subject matter of the unauthorized practice of law" are the exclusive province of the Indiana Supreme Court. *Miller*, 296 N.E.2d at 675; *see also Matter of Contempt of Mittower*, 693 N.E.2d 555, 558 (Ind. 1998). Thus, it is not the province of the jury in this civil action to determine whether Lancaster Pollard or Kennedy's alleged acts constitute the unauthorized practice of law in Indiana. That is an issue reserved exclusively for the Indiana Supreme Court.

As support for their negligence per se claim, Grace Village cites the plurality decision in *Kho v. Pennington*, 875 N.E.2d 208 (Ind. 2007), a case that has nothing to do with I.C. § 33-43-2-1. *Kho* involved a malicious prosecution claim in which two justices determined that the plaintiff doctor could pursue a claim for "statutory negligence" (negligence per se) for violations of the Indiana Medical Malpractice Act's confidentiality provisions. One justice concurred only

13

in the result without deciding "whether or not the medical malpractice statute creates some parallel private cause of action." *Id*. at 216. And the remaining two justices dissented in part because, in their view, there was "no claim of statutory negligence in the complaint" and "no claim of statutory negligence was litigated in the trial court" (*id.* at 217).

Grace Village also cites *Rhines v. Norlarco Credit Union*, 847 N.E.2d 233 (Ind. Ct. App. 2006), a case that has nothing to do with a claim of negligence *per se*. That case involved the court's rejection of a *pro se* defendant's argument that his due-process rights were violated by the trial court's refusal to let "his non-attorney friend act as his advocate at the summary judgment hearing" in which judgment was entered against him. *Id*. at 238.

Grace Village asserts that its "negligence claim is rooted in the common law, not I.C. § 33-43-2-1." *Plaintiffs' Br*. at 11. However, the motion to dismiss is not directed to their "negligence claim"; it is directed to their "negligence per se" claim. By definition, a claim for negligence per se must be rooted in a statute; it cannot be "rooted in the common law." That is why "negligence per se" is also called "statutory negligence." *See Weaver v. Tucker*, 461 N.E.2d 1159, 1161 (Ind. Ct. App. 1984) ("negligence per se, or statutory negligence"); *Kho*, 875 N.E.2d at 212 ("The violation of a duty fixed or prescribed by statute is often described as negligence *per se.*"). Clearly, Grace Village's negligence *per se* claim is expressly "rooted in" I.C. § 33-43-2-1. The Amended Complaint alleges in relevant part: "Lancaster Pollard and Kennedy's breaches and misrepresentations were negligent per se because neither Kennedy nor Lancaster Pollard is licensed to practice law in Indiana. Their breaches and misrepresentations therefore violated section 33-43-2-1 of the Indiana Code." *Amended Complaint* ¶ 80. The actual allegations pled by Grace Village refutes its contention that it has "not sued the Defendants for

violating I.C. § 33-43-2-1" (*Plaintiffs' Br.* at 11). Plaintiffs cannot amend their complaint through statements in a brief. *See Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (stating "the axiomatic rule that a plaintiff may not amend his complaint in his response brief").

Finally, as the Amended Complaint itself makes clear, Grace Village knew Lancaster Pollard and Kennedy were consulting with legal "counsel" and that these "conversations with counsel" related to the "best course of action" to take in the wake of Lehman's bankruptcy. *Amended Complaint* ¶ 39. Grace Village has failed to plead *facts* supporting a plausible claim Lancaster Pollard or Kennedy violated I.C. § 33-43-2-1 by transmitting "incorrect legal advice," as Grace Village's response now argues (*Plaintiffs' Br.* at 10). Grace Village has also failed to cite any legal authority for the proposition that an Ohio defendant that forwards "legal instruments" (*id.* at 12) prepared by its attorney thereby "engages in the business of a practicing lawyer" in Indiana in violation of I.C. § 33-43-2-1. Consequently, the negligence per se claim will be dismissed.

Next, the defendants argue that the claim for breach of fiduciary duty should be dismissed for two separate reasons. First, according to the defendants, the breach of fiduciary duty claim (Count III) is nothing more than a reformulation of the claim for "Professional Negligence, Misrepresentation, and Negligence Per Se" (Count II). *See Resolution Trust Corp. v. Vanderweele*, 833 F.Supp. 1383, 1386 (N.D. Ind. 1993) (dismissing breach of fiduciary duty claim and determining that plaintiff's "breach of fiduciary duty claim also fails to state a claim under either state or federal law because the claim amounts to nothing more than a reformulation of the negligence claim"); Fed. R. Civ. P. 12(f) (court may strike "redundant" matter from a

pleading).

Grace Village first alleges that Lancaster Pollard and Kennedy breached fiduciary duties by "failing to exercise ordinary care in advising Grace Village on how to properly terminate the Lehman swaps" (Dkt. 58, p. 14, ¶ 85(a)). However, ordinary care is "the classic formulation of a negligence standard of care." *Resolution Trust*, 833 F.Supp. at 1387.

Grace Village also alleges that Lancaster Pollard and Kennedy breached fiduciary duties by "miscalculating the amount due to Lehman to terminate the swaps," "preparing and providing Grace Village with notices that were ineffective under the Agreement," "incorrectly advising Grace Village to fax the notices to Lehman," "intentionally, recklessly, or at least negligently misrepresenting the effectiveness of faxing the notices," and "intentionally, recklessly, or at least negligently misrepresenting that the swaps had been terminated." Dkt. 58, pp. 14-15, ¶ 85(b)- (f). However, Grace Village makes these identical allegations in Count II (*see* Dkt. 58, p. 13, ¶ 79(a)-(e)) when discussing the alleged breach of Lancaster Pollard and Kennedy's "duty to Grace Village to exercise ordinary care in providing professional advice and services in connection with terminating the swaps." *Id*. at ¶ 78. Thus the defendants conclude that Count III should be dismissed because it is merely a reformulation of Count II.

Second, argue the defendants, even if the Amended Complaint can be read to sufficiently allege facts giving rise to a "fiduciary" duty, Grace Village's claim for breach of fiduciary duty also should be dismissed because the Amended Complaint does not and cannot allege that Lancaster Pollard and Kennedy wrongfully abused any confidence by improperly influencing Grace Village so as to obtain an unconscionable advantage. Under Indiana law, to succeed on a claim for breach of fiduciary duty, "it must be shown that the dominant party wrongfully abused

the confidence by improperly influencing the weaker so as to obtain an unconscionable advantage." *Huntington Mortgage Co. v. DeBrota*, 703 N.E.2d 160, 168 (Ind. Ct. App. 1998) (internal quotations omitted). Simply because the dominant party has "superior knowledge and expertise" is insufficient (*id.* at 167); if it were sufficient, then every claim for professional negligence would also give rise to a separate claim for breach of fiduciary duty. Rather, for a breach of fiduciary duty claim, the dominant party must have "exercised" or "used" the confidence bestowed on it by the weaker party "so as to obtain an unconscionable advantage." *Id.*

In the present case, the Amended Complaint does not allege that Lancaster Pollard or Kennedy (1) engaged in self-dealing for their own benefit, (2) placed their own interests above those of Grace Village, or (3) otherwise used its alleged fiduciary status to obtain an unconscionable advantage. Rather, the Amended Complaint simply alleges that they provided "wrong" advice to Grace Village regarding termination of the swap agreements that Grace Village had with Lehman.

Grace Village directs the court to an unpublished decision from the Southern District of Indiana in an attempt to draw a distinction that is irrelevant to the pending motion to dismiss. *Plaintiffs' Br.* at 14. Citing *Marwil v. Grubbs,* 2004 WL 2278751 (S.D.Ind. 2004), Grace Village incorrectly states that the motion to dismiss "focuses only on the fiduciary duty of loyalty, and not on the fiduciary duty of care." *Plaintiffs' Br.* at 14. However, the motion to dismiss does not hinge on whether Grace Village now labels its claim for breach of fiduciary duty as one involving "the fiduciary duty of care" or "the fiduciary duty of loyalty." Regardless of which label is attached, Indiana law is clear that a claim for breach of fiduciary duty requires a showing

"that the dominant party wrongfully abused the confidence by improperly influencing the weaker so as to obtain an unconscionable advantage." *Huntington Mortgage*, 703 N.E.2d at 168; *see also Kreighbaum*, 776 N.E.2d at 419; *Wilson*, 790 N.E.2d at 1047. Nothing in *Marwil* says otherwise.

Additionally, the fiduciary-duty claim (Count III) should be dismissed because it is merely a reformulation of the negligence claim (Count II). Grace Village contends that it may plead its "negligence and fiduciary duty claims alternatively, even if both are based on the same factual allegations." *Plaintiffs' Br.*, at 13. However, the two claims are not just based on "the same factual allegations" – they are also based on the same alleged breaches of the same standard of care. The Amended Complaint alleges Defendants breached fiduciary duties by "failing to exercise ordinary care in advising Grace Village on how to properly terminate the Lehman swaps" (*Amended Complaint* ¶ 85(a)). As noted above, ordinary care is "the classic formulation of a negligence standard of care." *Resolution Trust Corp. v. Vanderweele*, 833 F.Supp. 1383, 1387 (N.D. Ind. 1993). The Amended Complaint also makes identical allegations in Counts II and III regarding how Defendants allegedly breached the duty of care (*e.g.*, by "miscalculating the amount due to Lehman to terminate the swaps," by "incorrectly advising Grace Village to fax the notices to Lehman," etc.). *Cf. Amended Complaint* ¶ 79(a)-(e) *with* ¶ 85(b)-(f).

Having two claims based on the same facts and same alleged breaches of the same duty of care is redundant. *See* Fed. R. Civ. P. 12(f) (court may strike "redundant" matter from a pleading). As presently pled in the Amended Complaint, the fiduciary-duty claim "amounts to nothing more than a reformulation of the negligence claim." *See Resolution Trust*, 833 F.Supp. at 1386. Therefore, the breach of fiduciary duty claim will be dismissed.

The court will now briefly turn to the motions to dismiss filed by the third-party defendants[1]. The motions to dismiss seek to dismiss the third-party complaint[2]. These motions were filed prior to the settlement between Lehman and Grace Village, and also prior to the First Amended Complaint being filed. The motions were opposed for, among other reasons, being premature. In light of the events that have taken place since the filing of the motions, including the issuance of the present order, the court will deny the motions to dismiss. Permitting, however, that similar motions may be filed in the near future if necessary.

Conclusion

On the basis of the foregoing, the defendants' motion for partial dismissal [DE 60] is hereby GRANTED. Further, the third-party defendants' motions to dismiss [DE 22, DE 25] are hereby denied.

Further, in accordance with a Notice to Court filed on December 16, 2011 [DE 51], the third-party defendants' motion to dismiss [DE 17] and defendants' motion to stay [DE 39] are both hereby deemed MOOT.

Entered: September 7, 2012

s/ William C. Lee

---

[1] Although they filed separate motions, the third-party defendants filed one set of briefs for one motion in that third-party defendant Jason L. George simply relied on the briefs of third-party defendant Peck, Shaffer & Williams, LLP. Thus, the motions will be considered together as one motion.

[2] The third-party complaint alleges malpractice and seeks indemnification from the third-party defendants in the event the defendants, Lancaster Pollard and Kennedy, are found liable for the amounts Grace Village paid to Lehman in settlement.

William C. Lee, Judge
United States District Court