UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| GRACE VILLAGE HEALTH CARE ) <br> FACILITIES, INC. and NATIONAL ) <br> FELLOWSHIP BRETHREN ) <br> RETIREMENT HOMES, INC., ) <br> ) <br>     Plaintiffs, ) <br> ) <br>   v. ) <br> ) <br> LANCASTER POLLARD & CO. and ) <br> STEVEN W. KENNEDY, ) <br> ) <br>     Defendants. ) | CIVIL NO. 3:11cv295 |

OPINION AND ORDER

This matter is before the court on "Defendants' Objections to Magistrate Judge's Order of April 16, 2013", filed by the defendants Lancaster Pollard & Co. and Steven W. Kennedy (collectively, "Lancaster Pollard"), on April 23, 2013. The plaintiffs, Grace Village Health Care Facilities and National Fellowship Brethren Retirement Homes, Inc. (collectively, "Grace Village"), responded to the objections on May 7, 2013, to which Lancaster Pollard replied on May 14, 2013.

For the following reasons Lancaster Pollard's objections will be denied.

Discussion

When Lehman Brothers and its related entities filed for bankruptcy in the Southern District of New York in September 2008, Lancaster Pollard, a for-profit investment bank, advised Grace Village, a not-for-profit retirement community, on how to terminate two interest-rate swaps Grace Village had with Lehman. Lancaster Pollard provided directions to Grace Village on how those terminations were to be documented, wrote the proposed termination notice, and provided specific instructions on delivering the termination notice to Lehman.

However, Lehman asserted claims against Grace Village for failing to properly terminate the swaps. Lehman asserted those claims through a mandatory ADR process overseen by the United States Bankruptcy Court for the Southern District of New York. Grace Village asserts that, but for Lancaster Pollard's advice, Lehman would have had no claims to assert against Grace Village.

Grace Village claims that it was immediately forced to defend against Lehman's claims and to incur substantial legal fees and costs. Grace Village claims that it was further forced to choose between litigating Lehman's claims in New York—thereby incurring further defense costs and risking an adverse judgment on Lehman's claims—or mitigating its liability by settling during the mandatory ADR process. Grace Village took the latter course and settled, and now seeks to recover from Lancaster Pollard both the settlement Grace Village paid to Lehman and the expenses it incurred responding to Lehman's claims during the ADR process. Grace Village paid $1,050,000 to Lehman to settle the disputed claim which it seeks to recover from Lancaster Pollard. Grace Village also seeks to recover over $100,000 in attorney fees and expenses paid to attorneys at Barnes & Thornburg for defending the Lehman claim.

In the course of litigation, Lancaster Pollard filed a motion to compel [Dkt. 93] seeking confidential attorney-client communications between the Grace Village attorneys, Barnes & Thornburg, regarding Grace Village's settlement with Lehman. After full briefing and a hearing, the Magistrate Judge denied the portion of Lancaster Pollard's motion seeking the production of these documents. [Dkt. 107]. Lancaster Pollard objects to that portion of the Magistrate Judge's Order.

Lancaster Pollard has taken the position that Grace Village was not required to settle with

Lehman, and that it never advised Grace Village to settle the claim or pay Lehman $1,050,000. Thus, Lancaster Pollard states the issue as "Why did Grace Village pay $1,050.000 to Lehman", and claims that it is entitled to documents it believes will reveal "what and who were the direct and immediate causes of Grace Village's decision to pay over $1 Million on Lehman's meritless claim." Lancaster Pollard argues that Grace Village has impliedly waived any claim that documents related to communications between Grace Village and Barnes & Thornburg in reaching the Lehman settlement and the documents prepared by Grace Village's attorney toward the Lehman settlement are protected by the attorney-client privilege or the attorney work-product doctrine. The Magistrate Judge held that Grace Village did not implicitly waive its attorney-client privilege and that the work product of Grace Village's attorneys has not been voluntarily injected into this case by either party.

The Seventh Circuit has held that a claim of privilege may be waived "either explicitly or by implication." *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (1987) (citing *Key v. State*, 132 N.E.2d 143 (Ind. 1956)). Implied waiver occurs, for example, "when a holder relies on a legal claim or defense, the truthful resolution of which will require examining confidential communications." *Id.* Indiana law recognizes such "at issue" waiver because a party may not use a privilege "as both a shield and a sword." *See Madden v. Indiana Dept. of Transportation*, 832 N.E.2d 1122, 1128 (Ind. Ct. App. 2005) ("Such a result would be unacceptable because it would allow the privilege holder to thwart the truth-seeking process by using the privilege as both a shield and a sword.") (internal quotations omitted).

According to Indiana law, a plaintiff puts the attorney-client privilege "at issue"—and thus waives the privilege—only where the "client relies specifically on advice of counsel to

support a claim"; in other words, "[o]nly when the client seeks to take advantage of the privileged communications themselves should a waiver be found on the theory that the client has put the attorney's advice in issue." *Harter v. University of Indianapolis*, 5 F. Supp. 2d 657, 664 (S.D. Ind. 1998); see also *Clark v. Munster*, 115 F.R.D. 609, 614 (N.D. Ind. 1987) ("In the instant case, the privileged communications were not placed in issue by the complaint. David [the plaintiff] has not challenged the advice given to him by his attorney nor has he attempted to rely upon that advice as the basis of a claim or defense.").

Grace Village contends that it has not, and need not, rely on privileged communications to make its case against Lancaster Pollard. Grace Village asserts a claim for professional negligence against Lancaster Pollard. It alleges that Lancaster Pollard's bad advice caused Lehman to assert a claim against it, resulting in Grace Village expending litigation expenses to defend the claim and $1,050,000 to settle it. For Grace Village to prevail on that claim, it must show: (1) Lancaster Pollard owed a duty to Grace Village that Lancaster Pollard breached by providing bad advice about how to terminate the Lehman swaps; and (2) the act of Lehman asserting a claim against Grace Village was the foreseeable result of Lancaster Pollard's breach. *See INS Investigations Bureau, Inc. v. Lee*, 784 N.E.2d 566 (Ind. Ct. App. 2003) (applying same foreseeability standard for proximate causation in professional negligence case); *see also Franklin United Methodist Home v. Lancaster Pollard & Co.*, No 10-1086 (S.D. Ind. May 2, 2012) (same) [Dkt. 87 at 20-21].

Grace Village notes that Lancaster Pollard fails to point to a single place in the record where Grace Village has alleged or stated that it intends to prove its case through its reliance on the advice of its attorneys. While Lancaster Pollard points to one interrogatory answer where

4

Grace Village identifies by name the Barnes & Thornburg attorneys involved with the Lehman settlement, Lancaster Pollard omits any reference to the interrogatory answers which give Grace Village's reasons for settling, none of which include the advice of it attorneys. [Dkt. 98-1]. In fact, Lancaster Pollard filed as part of its objections only excerpts of Grace Village's interrogatory answers that did not include Grace Village's reasons for settling. In addition, Dkt. 98-1 was not part of the record considered by the Magistrate Judge.

Grace Village claims that to recover the costs of its settlement with Lehman, Grace Village need not defend whatever advice its attorneys gave it regarding settlement. Rather, Grace Village must show that its decision to settle, and the settlement itself, were "fair and reasonable," *Price v. Amoco Oil Co.*, 527 F. Supp. 364, 635 (S.D. Ind. 1981)—an objective standard that does not take into consideration the subjective opinions of Grace Village's lawyers about the merits or demerits of Lehman's claim against Grace Village. *See, e.g. Deutsche Bank Trust Co.*, 43 A.D.3d at 65 ("The need to determine the reasonableness of the amounts Bankers Trust spent to defend and settle the WMI action does not, however, place at issue the legal advice Bankers Trust received from its attorneys in that litigation, those attorney's work product, or their private mental impressions, conclusions, opinions or legal theories.")*; see also Home Ins. Co. v. Advance Mach. Co.*, 443 So. 2d 165 (Fla. Ct. App. 1983) (holding that insurance company did not waive its attorney-client privilege by bringing an action for contribution when the reasonableness of a settlement was at issue).

Grace Village argues that Lancaster Pollard is using its own defenses and defensive case theories (such as comparative fault) as a way to compel production of confidential communications between Grace Village and Barnes & Thornburg, and that it is not permissible

5

for Lancaster Pollard to waive the privilege for Grace Village. *See Harper*, 5 F. Supp. 2d at 664.

Lancaster Pollard, however, argues that its alleged bad advice to Grace Village is not the only issue that Grace Village has put in play by filing this lawsuit. Lancaster Pollard states that Grace Village has explicitly sued Lancaster Pollard for reimbursement of sums paid to settle with Lehman. Lancaster Pollard claims that to prove it is entitled to damages based on the settlement of its claim with Lehman, Grace Village must prove that Lancaster Pollard caused Grace Village's settlement with and payment to Lehman. While this may (or may not) be true, the law is clear that Grace Village does not have to defend the advice it received from its attorneys. *Price, supra; Deutsche Bank, supra.* Rather, Grace Village need only prove that the decision to settle, and the terms, were reasonable. This is an objective standard, and the Court sees no need to require Grace Village to divulge the specifics of its communications with counsel regarding the settlement. As the Magistrate Judge noted, Grace Village has not stated that it intends to use privileged materials as proof of its claims (nor is any such implication apparent in the record), and thus the Court agrees with the Magistrate Judge that Grace Village has not voluntarily injected its attorneys' advice into this case or demonstrated an intent to disclose confidential communications in order to prove any of its claims.

## Conclusion

Based on the foregoing, the defendants' Objection to Magistrate Judge's Order [DE 109] is hereby DENIED.

Entered: August 6, 2013.

s/ William C. Lee
William C. Lee, Judge
United States District Court
